UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CORNELIUS HARRIS                  Case No. 1:20-cv-769

    Plaintiff,

                                                      Black, J.
         vs                                Bowman, M.J.

RON ERDOS, *et al.,*

    Defendants.

**REPORT AND RECOMMENDATION**

Plaintiff, a prisoner at the Southern Ohio Correctional Facility (SOCF), filed a pro se civil rights complaint against Defendants Warden Ron Erdos, Major Garry Galloway, Lt. Rodney Osborne, Correctional Officer Joshua Gullett, Correctional Officer Chad Taylor and Registered Nurse Teresa Hill. This matter is now before the Court on the Defendants motion for summary judgment which was filed on May 7, 202. (Doc. 17).  Thereafter, on October 13, 2021 Plaintiff filed an untimely response to the motion for summary judgment (Doc. 23) and a separate motion to amend his complaint. (Doc. 24).  Defendants timely replied. (Doc. 26).

    **I. Background and Facts**

On September 25, 2020, inmate Harris filed a pro se civil rights complaint under 42 U.S.C. § 1983 alleging excessive force was used on him in two separate incidents. One on May 18, 2020 and the other on June 12, 2020. (Doc. 1, PageID 16, 19).

    **A.**     **May 18, 2020 Incident**

On May 18, 2020, Plaintiff was told he would need to give a blood sample, which he refused.  In response, Defendants assembled a five-man team to escort him to the infirmary.  During the escort he alleges that Defendant Tayler and another unknown

1

officer, who were each holding an arm, began to twisted his hands and wrists causing him pain. Once he arrived at the infirmary he was placed in a four-way restraint and strapped down. Plaintiff alleges that Defendant Tayler then attempted to gouge his eyes outs with his fingers, pressed his thumb into his neck and used his hand to over Plaintiff's nose and mouth, all causing pain. Defendants held Plaintiff's right arm down so his blood could be drawn. Plaintiff also alleges that a catheter was used to obtain a urine sample against his will. Once the procedures were complete, the straps were removed and Plaintiff was escorted to a cell to be strip searched. After Plaintiff was strip searched, he was escorted back to his cell. The entire incident was recorded by a member of the 5-man team. Plaintiff alleges that the camera was intentionally pointed away from him while in the infirmary so as not to have the excessive use of force recorded. (Doc. 3, PageID 35, 37).

Plaintiff submitted a kite to Chief Institutional Inspector ("CII") Linnea Mahlman relating to the May 18, 2020 incident. The kite indicates that Plaintiff was filing it as a grievance regarding application of OAC 5120-9-04, which pertains to inappropriate supervision. Specifically, that code section states, "inappropriate supervision means any continuous method of annoying or needlessly harassing an inmate or group of inmates, including, but not limited to, abusive language, racial slurs, and the writing of inmate conduct reports strictly as a means of harassment." OAC 5120-9-04(B). The kite, however, did not include any inappropriate supervision as defined above. Rather, Plaintiff alleged that Officer Taylor and a John Doe officer used excessive force on him during the escort from his cell to the infirmary on May 18, 2020. (Doc. 14, Ex. 3 ,Kite, ¶¶ 1-4).

Plaintiff alleged he suffered minor injuries and swelling to his wrists. (Doc. 14, Ex. 3, Kite, ¶6).

Mahlman's office received Plaintiff's kite on June 5, 2020. (Doc. 14, Mahlman Decl, PageID 85). Mahlman previously placed Plaintiff on grievance restriction from March 18, 2020 through June 17, 2020. As such, Plaintiff was restricted from filing Informal Complaint Resolutions ("ICR") during this period. He was put on ICR restriction due to his misuse and abuse of the system as identified. (Doc. 14, PageID 85). Even so, he was provided with a means of submitting claims that present a substantial risk of physical injury, such as a medical concern, through the inmate grievance procedure. (Id.)

Mahlman reviewed Plaintiff's kite and found that Plaintiff was on grievance restriction at the time. Malhlman noted the matters alleged in the kite did not pose a substantial risk of physical injury. (Doc. 14, Mahlman Decl.).

### B. June 12, 2020 Incident

According to the complaint, on June 12, 2020, Plaintiff claims that Defendants opened his cell door to allow another inmate to assault him. Plaintiff claims he then exited the cell to protect himself. Thereafter, Plaintiff claims that Defendant Gullett ordered him back into his cell. Plaintiff alleges that while walking back into his cell Gullett sprayed him with Oleoresin Capsicum, commonly known as "OC" or pepper spray, in the back of his head and neck when he was of no threat. (Doc. 3 at 11).

On June 17, 2020, the day his grievance restriction ended, Plaintiff sent an ICR, identified as No. 06-20-195, that pertained to an incident on June 12, 2020. In the ICR, he stated that he feared for his safety, and that he "will not tolerate your officers

3

threatening my safety!" (Doc. 14). Major Galloway responded to Plaintiff's ICR by stating, "There is currently an investigation being conducted on this incident." (Id., PageID 99).

### C. Cell Complaints

Plaintiff's complaint further alleges that since his arrival at SOCF Defendants Erdos and Galloway placed him in punitive segregation. (Doc. 3, PageID 39). Plaintiff claims Defendants Erdos and Galloway authorized him to be permanently housed in a cell that has Plexiglass or a steel plate covering the entire cell, thereby blocking all ventilation in the cell. Plaintiff claims that the alleged lack of ventilation has caused headaches and breathing problems that affect his sleep. Plaintiff claims that he is being housed under these conditions in violations of ODRC's own policy which provides that prisoners cannot be housed in a Plexiglass/slammer cell more than 29 days. Plaintiff claims to be housed in this type of cell for "nearly a year straight."

Based on the foregoing, Plaintiff claims that he has suffered physical and emotional injuries, that he has a hard time falling asleep, and he fears that his cell door will be opened and that he will be assaulted by officers. (Doc. 3, PageID 40, ¶16). As a result, Plaintiff seeks declaratory and injunctive relief, finding that Defendants Taylor, Gullett and two John Doe officers used excessive force on him in violation of the Eighth Amendment, and he alleges state claims of assault and battery. (Id., PageID 36, ¶A1). He also alleges a failure to protect claim against Warden Erdos claiming such failure allowed Defendants Taylor and Gullet to use excessive force against him in violation of the Eighth Amendment, and he alleges this also constitutes assault and battery under state law. (Id., ¶A2). Plaintiff also seeks an injunction ordering Defendant Erdos to immediately remove him from the plexiglass/slammer cell and into a "normal" cell, and to

4

comply with ODRC's own policy on this issue, (Id., ¶B1). Plaintiff also alleges an equal protection claim against Warden Erdos and Captain Galloway due to his placement in a plexiglass/slammer cell. (Id.). He seeks compensatory damages of $75,000 jointly and severally against all Defendants and punitive damages of $20,000 against each Defendant. (Id., PageID 41).

Defendants now move for summary judgment.

**II. Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met its burden of production, the nonmoving party cannot rest on the pleadings, but must present significant probative evidence in support of his case to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 248-49. The mere scintilla of evidence to support the nonmoving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. Id. at 252.

As Plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). However, his status as a pro se litigant does not alter his burden of supporting his factual assertions with admissible evidence when faced with a summary judgment motion. *Maston v. Montgomery Cnty. Jail Med. Staff Personnel*, 832 F. Supp. 2d 846, 851-52 (S.D. Ohio 2011) (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App's 482, 485 (6th Cir. 2010)).

**III. Analysis**

**A. Defendants' motion for summary judgment is well-taken**

Defendants argue that they are entitled to judgment as a matter of law because Plaintiff failed to exhaust his administrative remedies. Even assuming Plaintiff complied with exhaustion, Defendants argue that Plaintiff has failed to provide any evidence that they violated his rights under the Eighth Amendment, and the Eleventh Amendment bars his claims for monetary damages against Defendants in their official capacities and bars any state law claims for either money damages or injunctive relief. Defendants further argue that they are entitled to qualified immunity, warranting dismissal of Plaintiff's Complaint with prejudice. For the reasons explained below, the undersigned finds Defendants' motion for summary judgment to be well- taken.

*1. Exhaustion*

Pursuant to the Prison Litigation Reform Act ("PLRA"), prisoners are required to fully exhaust available institutional remedies prior to filing suit in federal court. See 42 U.S.C. § 1997e ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

6

prison, or other correctional facility until such administrative remedies as are available are exhausted."). In *Porter v. Nussle,* the Supreme Court held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Id., 534 U.S. 516, 532, (2002) (citing *Wilson v. Seiter*, 501 U.S. 294, 299, n. 1, (1991)). It has become well-established that "exhaustion is mandatory under the PLRA and unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 204, (2007).

However, an inmate's obligation to exhaust hinges on the availability of administrative remedies. *Ross v. Blake*, 136 S.Ct. 1850, 1853 (2016). There are three circumstances in which an administrative remedy, although officially available, is not capable of use to obtain relief: (1) an administrative procedure is unavailable when it operates as a "simple dead end," with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) an administrative scheme might be so opaque it becomes practically incapable of use to the ordinary prisoner; and (3) a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through "machination, misrepresentation, or intimidation." *Id.* at 1853-54.

Pursuant to Ohio Adm. Code 5120-9-31(J), there is a three-step process for resolving inmate complaints in Ohio. First, within fourteen days of the event giving rise to the complaint, the inmate shall file an informal complaint to the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint. Ohio Adm. Code 5120-9-31(J)(1). Second, if the inmate is dissatisfied with the ICR response, the inmate may file a notice of grievance ("NOG") with the inspector of

7

institutional services. Ohio Adm. Code 5120-9-31(J)(2). The inmate must file all grievances no later than fourteen days from the date of the informal complaint response. Id. Finally, if the inmate is dissatisfied with the disposition of grievance, the inmate may file an appeal with the Office of the Chief Inspector within fourteen days of the date of the disposition of grievance. Ohio Adm. Code 5120-9-31(J)(3).

    Here, Defendants argue that Plaintiff failed to exhaust his administrative remedies on the issues raised in his complaint. Because Plaintiff was abusing and misusing the grievance process, he was placed on grievance restriction. (Doc. 14-1, Mahlman Decl., PageID 85). Mahlman sent Plaintiff a letter dated March 17, 2020, that placed him on grievance restriction for ninety (90) days. (Doc. 14, Restriction Letter, Id., PageID 87). The letter included information as to how Plaintiff could still pursue issues that could present a substantial risk of physical injury, such as medical concerns, through the inmate Grievance Procedure, as determined by the Inspector. (Id.). During the ninety (90) day restriction, Plaintiff had unrestricted access to the kite system. (Id.). Any emergencies he wished to address could be made known by kite to the Inspector, or in person to institutional staff. The effective date of the restriction was March 19, 2020. (Id.)

    As noted by Defendants, during his period of restriction, Plaintiff sent a kite to Mahlman regarding the May 18, 2020 escort from his cell to the infirmary to have blood withdrawn and a urine sample collected, which he opposed. (Doc. 14-1, Mahlman Decl., Kite, PageID 98). Plaintiff alleges that CO Taylor and Officer John Doe used unnecessary force against him during his escort from J1 to the infirmary. (Id.). In the kite, Plaintiff alleges that CO Taylor took hold of his left hand and Officer John Doe took control of his right hand during the escort. (Id.). He alleges CO Taylor began to twist and bend his left

8

wrist and fingers in an unnatural position in an attempt to break his hand, causing him extreme pain. (Id.). He alleges that Officer John Doe did the same to his right hand and wrist during the escort, and that he voiced to both that this was causing him pain. (Id). According to Mahlman's Declaration, her office received the Kite on June 5th, 2020. (Id., PageID 14-1, ¶22).

Inmates are required to file an ICR within fourteen days of the incident that is the subject of the grievance. (Id., PageID 93). Here, Plaintiff would have had to file an ICR or kite on or before June 1, 2020 to meet this deadline per Ohio's grievance procedure. *See* Ohio Adm. Code 5120-9-31(J). He failed to do so as he filed the kite in question on June 4th after Mahlman picked up the kites for that day or on June 5th, 2020. (Id., PageID 87, ¶28-29). Further, Plaintiff was on grievance restriction at the time and the matters alleged in the kite did not pose a substantial risk of physical injury, such as a serious medical concern; therefore, Defendant claims that Plaintiff also failed to exhaust this claim due to the restriction placed on him for the ninety-day period.

With respect to the Plaintiff's alleged excessive force claim from June 2020, Plaintiff submitted one ICR, numbered 06-20-195, which was received by Major Galloway on June 23, 2020, after the ninety (90) day restriction period had ended. (Id., PageID 88, ICR, PageID 99). In this ICR, Plaintiff claimed that on June 12, 2020, his cell door was opened without justification by CO Gullett, with Plaintiff stating, "I will not tolerate your officers threatening my safety!" (Id., PageID 99). Notably, Plaintiff did not claim excessive force was used on him; rather he claimed that his cell door was opened which he believed threatened his safety. Also, Plaintiff alleged in his Complaint that Major Galloway failed to respond to this ICR. (Doc. 1, PageID 15, Doc. 14-1, PageID 99).

However, the record indicates that Major Galloway responded to Plaintiff's ICR by stating, "There is currently an investigation being conducted on this incident." (Id., PageID 99). Plaintiff did not file a NOG, nor did he file an Appeal. Plaintiff did not pursue this grievance past step one of Ohio's three-step grievance process as set forth in OAC 5120-9-31. *See* Mahlman's Declaration (Doc. 14-1, PageID 88, ¶¶32-33). Therefore, Defendants contend, and the undersigned agrees, that Plaintiff failed to exhaust his administrative remedies as to the issue contained in ICR 06-20-195.

Moreover, this ICR in question does not include Plaintiff's claim that on June 12, 2020, CO Gullett sprayed him with OC. (Doc. 3, PageID 39, Doc. No. 14-1, PageID 88, ¶32). Plaintiff failed to grieve the use of OC spray at all regarding the June 12, 2020 incident. As such, Defendants contend that Plaintiff failed to exhaust his administrative remedies on this issue prior to filing his Complaint, warranting its dismissal. The undersigned agrees.

Plaintiff has neither alleged the established administrative process is "not capable of use to obtain relief," nor that Defendants, or any other correctional officer or institutional staff member, affected his ability to begin the grievance process. *See Ross*, 136 S.Ct. at 1853. To the contrary, Plaintiff had unlimited access to the kite system in order to communicate with administrative personnel. (Doc. 14, PageID 98). Thus, Plaintiff has failed to exhaust administrative remedies because he did not undertake the remaining steps of the grievance process, and Defendant is entitled to judgment as a matter of law.

2. *Excessive Force Claims*

Assuming that Plaintiff properly exhausted his administrative remedies, which he has not, Plaintiff has failed to establish any violation of his rights under the Eighth

Amendment. As noted by Defendants, CO Taylor did not escort Plaintiff to the infirmary on May 18, 2020. (Doc. 14, Ex. 3 Taylor Decl.). However, even assuming Plaintiff correctly identified individuals that used an escort technique on him during his walk to the infirmary, such action does not violate the Eighth Amendment. The Sixth Circuit has interpreted the PLRA, § 1997e(e), to require that prisoners bringing claims under the Eighth Amendment show more than de minimis physical injuries for his claim to go forward. *Hunter v. Clark*, No. 2:11-CV-06, 2013 WL 3049085 (E.D. Tenn. 2013) (citing *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010). *De minimis* injuries for purposes of § 1997e(e) may include such things as swelling, pain, and cramps. *Jarriett v. Wilson,* 162 Fed. App'x. 394, 400-401 (6th Cir. 2005). For purposes of § 1997e(e), de minimis injuries may also include bruises and/or cuts. *Corceetti v. Tessmer*, 41 Fed. App'x. 753, 755 (6th Cir. 2000). See *Jones Bey v. Johnson*, 248 Fed. Appx. 675, 677 (6th Cir. 2007) (pain and swollen wrists resulting from tight handcuffs and striking a food slot are de minimis injuries under the Eighth Amendment). Here, any injuries suffered by Plaintiff during that escort or related to his forced blood and urine tests were *de minimis*.

Similarly, other than unsupported conclusory allegations, Plaintiff fails to provide any evidence in support of his claim that CO Gullett used OC spray on him for no penological reason. Notably, there is no evidence that this incident occurred at all. In light of the foregoing, the undesigned finds that Defendants are entitled to judgment as a matter of law with respect to these claims.

*3. Cell Complaints*

As outlined above, Plaintiff claims that his cell assignment and cell conditions violate his constitutional rights. Again, other than unsupported conclusory allegations, Plaintiff's fails to provide any evidence in support of this claim.

As noted by Defendants, Plaintiff has no constitutional right to a cell assignment. Prison administrators are provided "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish* (1979), 441 U.S. 520, 547, 99 S. Ct. 1861. Nor do prisoners have a constitutional right to any particular security classification. *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976), see also *Olim v. Wakinekona* (1983), 461 U.S. 238.

Furthermore, absent a claim pleading extreme conditions raising serious risks to prisoner health, the courts routinely have determined that claims concerning ventilation are insufficient to state an Eighth Amendment claim. *See, e.g., Vasquez v. Frank*, 290 F. App'x 927 (7th Cir. 2008) (holding that ventilation that allegedly caused dizziness, migraines, nasal congestion, nose bleeds and difficulty breathing did not rise to the level of an Eighth Amendment violation); *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (upholding the dismissal of a prisoner's claim that the confiscation of his extension cord, which was needed to operate a fan, deprived him of constitutionally adequate ventilation); *Jasman v. Schmidt,* 4 F. App'x 233, 235-36 (6th Cir. 2001) (affirming dismissal of a claim that the weather stripping on the doors of the cells at a Michigan prison prevented air circulation and resulted in inadequate ventilation); *Thompson v. County of Medina*, 29

F.3d 238 (6th Cir. 1994) (upholding a dismissal of pretrial detainees' claim that a jail had inadequate ventilation).

Accordingly, Defendants are entitled to judgment as a matter of law with respect to these claims.

### 4. Eleventh Amendment

The Eleventh Amendment to the United States Constitution bars suits against either a state or agencies of a state by citizens of that state. *Edelman v. Jordan*, 415 U.S. 651, 651 (1974). Where a state has not waived its immunity, and there has been no Congressional abrogation, the Eleventh Amendment acts as a jurisdictional bar to a federal court lawsuit against a state. *Wolfel v. Morris*, 972 F.2d 712, 718 (6th Cir. 1992). Ohio has not waived its sovereign immunity, and Congress did not disturb the states' Eleventh Amendment immunity when it passed 42 U.S.C. § 1983. (Id. at 718); *McCormick v. Miami Univ.*, 693 F.3d 654, 664 (6th Cir. 2012); *Mackey v. Cleveland State Univ.*, 837 F. Supp. 1396, 1403 (N.D. Ohio 1993). State law claims brought in federal court, for either money damages or injunctive relief, are barred by the Eleventh Amendment. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100 (1984); Missouri v. Fiske, 290 U.S. 18, 27 (1933).

Accordingly, to the extent Plaintiff sues Defendants in their official capacity or sues for state-law claims, the Eleventh Amendment bars those claims seeking monetary damages, warranting their dismissal.

### 5. Qualified Immunity

Defendants are also entitled to qualified immunity as to all of Plaintiff's claims. Notably, qualified immunity protects government officials "from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity not only insulates government officials from individual liability for money damages, but from the burdens and expenses of litigation and trial. *Saucier v. Katz*, 533 U.S. 194, 200–201 (2001).

The doctrine of qualified immunity is intended to balance the following competing interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed. 2d 565 (2009). Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229,(1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341, (1986)). *See also Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008).

Qualified immunity applies regardless of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson*, 555 U.S. at 231. Here, Defendants are entitled to qualified immunity in their individual capacities on the record presented because Plaintiff has failed to show that any Defendant violated any clearly established constitutional right of which a reasonable person would have known.

For these reasons, the undersigned finds that Defendants motion for summary judgment should be granted, *in toto.*

**B. Plaintiff motion to amend is not well-taken**

In his Motion to Amend, Plaintiff seeks to remove CO Taylor from his Complaint and replace him with CO James D. Rigsby. (Doc. 24, PageID 319). He also seems to want to add a claim of retaliation against CO Tyler Perish. (Id., PageID 319-320). He wants to further substitute CO Tyler Perish for John Doe #1, for having bent and twisted his right hand and wrist during the May 18, 2020 escort described in his Complaint. (Id.). He names John Doe #2 as Ryan C. Jordan, who he says was operating the camera during the May 18, 2020 Use of Force described in his Complaint. (Id). He then desires to name Michael T. Barney in place of John Doe #3, who he says is the nurse that took a forced urine sample from him. (Id.). Plaintiff also seeks to add CO Stinger to the case for his role in either participating in the destruction of his property/legal documents or for failing to act to stop CO Perish from destroying his documents, and to add this claim to his Complaint. (Id., PageID 321). Plaintiff also seeks to add additional allegations relating to health concerns on or around late May 2020.

Rule 15(a) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15 reinforces "the principle that cases 'should be tried on their merits rather than the technicalities of pleadings.'" *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) (*quoting Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982)). The grant or denial of a request to amend a complaint is left to the broad discretion of the trial court. *Gen'l Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990). In exercising this discretion, the trial court may consider such factors as "undue delay, bad faith or dilatory motive on the part of a movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment [and] futility of the amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962). See also *Brumbalough v. Camelot Care Ctrs*., Inc., 427 F.3d 996, 1001 (6th Cir. 2005).

At this late stage in the litigation, Defendants argue that justice does not require that Plaintiff be afforded an opportunity to amend his Complaint. Defendants further argue that Plaintiff will not be prejudiced by denial of the motion to amend as he can file another complaint for allegations against additional, new defendants and/or regarding additional, new claims he may have. *See Hetep v. Warren*, 27 Fed. Appx. 308, 309 (6th Cir. 2001)(district court did not abuse discretion in denying amendment to allege new, unrelated claims against new defendants); *Barnes v. Morgan*, Case No. 1:11-cv-380, 2012 U.S. Dist. LEXIS 5636, 2012 WL 147948 at *9-11 (S.D. Ohio Jan. 18, 2012) (R&R recommending denial of additional retaliation claim as insufficiently related to claims in original complaint, adopted at 2012 U.S. Dist. LEXIS 33836, 2012 WL 8688997 (S.D. Ohio Mar. 14, 2012).

As summary judgment is being recommended on the claims against the current Defendants, the motion to amend should be denied without prejudice to Plaintiff refiling any new claims he may have as a separate civil action. *Pleasant-Bey v. Luttrell*, No. 11-2138-JDT-CGC, 2012 WL 4468501, at *5 (W.D. Tenn. Sept. 25, 2012).

### IV. Conclusion

In light of the foregoing, it is herein recommended that (1) Defendants' motion for summary judgment (Doc. 35) be **GRANTED**; Plaintiff's motion to amend (Doc. 24) be **DENIED without prejudice**; all remaining motions (Docs. 25, 31) be **DENIED as MOOT** and this matter **CLOSED.**

      *s/*Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| CORNELIUS HARRIS | Case No. 1:20-cv-769 |
| Plaintiff, | |
| | Black, J. |
| vs | Bowman, M.J. |
| RON ERDOS, *et al.,* | |
| Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).